UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| R.K.,<br><br>                Plaintiff,<br><br>        v.<br><br>KILOLO KIJAKAZI,<br><br>                Defendant. | Case No.  21-cv-01764-VKD<br><br>**ORDER RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 17, 18 |

Plaintiff R.K.[1] appeals a final decision of the Commissioner of Social Security ("Commissioner")[2] denying his application for supplemental security income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. § 1381, *et seq.*  R.K. contends that the ALJ erroneously concluded that his mental impairments are not severe, improperly evaluated medical opinions, and failed to provide sufficient reasons for discounting his statements and testimony regarding the alleged intensity, persistence, and limiting effects of his symptoms.

The parties have filed cross-motions for summary judgment.  Dkt. Nos. 17, 18, 19.  The matter was submitted without oral argument.  Upon consideration of the moving and responding papers and the relevant evidence of record, for the reasons set forth below, the Court grants R.K.'s motion for summary judgment, denies the Commissioner's cross-motion for summary judgment,

---

[1] Because orders of the Court are more widely available than other filings, and this order contains potentially sensitive medical information, this order refers to the plaintiff only by his initials.  This order does not alter the degree of public access to other filings in this action provided by Rule 5.2(c) of the Federal Rules of Civil Procedure and Civil Local Rule 5-1(c)(5)(B)(i).

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as defendant in place of Andrew Saul.

United States District Court
Northern District of California

and remands this matter for further administrative proceedings consistent with this order.[3]

## I.    BACKGROUND

R.K. is 57 years old and has a high school education.  He has worked as a taxicab driver and taxicab dispatcher.  *See* AR[4] 60, 116, 272, 316.

R.K. protectively filed his SSI application on December 22, 2015, alleging that he has been disabled and unable to work beginning on May 1, 2013.  *See* AR 38, 127, 272, 295.  His application was denied initially and on reconsideration.  AR 116-126, 128-147.  An ALJ held an initial hearing on October 1, 2018 at which a vocational expert testified.  AR 56-79.  The ALJ held a subsequent hearing on June 20, 2019, at which a medical expert and a vocational expert testified.  AR 80-115.

On August 6, 2019, the ALJ issued an unfavorable decision.  AR 38-49.  She found that R.K. has not engaged in substantial gainful activity since the December 22, 2015 date of his SSI application.  AR 40.  She further found that R.K. has the following severe impairments:  bilateral carpal tunnel syndrome ("CTS"), status post releases, status post trigger finger release; human immunodeficiency virus ("HIV"); HIV-related neuropathy; sciatica; and chronic obstructive pulmonary disease ("COPD").  *Id*.  While the ALJ found that R.K. has medically determinable impairments of depressive disorder, not otherwise specified ("NOS") and a history of substance abuse disorder, she concluded that these impairments do not cause more than mild limitation in his ability to perform basic mental work activities, and are not severe.  AR 40-41.  The ALJ further found that R.K. does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments listed in the Commissioner's regulations.  AR 42.  The ALJ determined that R.K. has the residual functional capacity ("RFC") to perform less than the full range of light work.  Specifically, she found that R.K. is limited to:

> standing and walking for two hours in an 8-hour workday, with a
> cane for standing and walking; sitting for 6 hours in an 8-hour

---

[3] All parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by a magistrate judge.  28 U.S.C. § 636(c); Fed. R. Civ. P. 73; Dkt. Nos. 8, 10.

[4] "AR" refers to the certified administrative record lodged with the Court.  Dkt. No. 16.

United States District Court
Northern District of California

1

> workday; occasional balancing, stooping, crouching and crawling;
> no more than frequent bilateral handling and fingering; must avoid
> extreme cold and heat; must avoid even moderate exposure to
> unprotected heights, around dangerous moving machinery and
> humidity.

AR 42-43.  The ALJ found that R.K. is capable of performing his past relevant work as a taxicab dispatcher and that this work does not require the performance of work-related activities precluded by R.K.'s RFC.  AR 48-49.  Accordingly, the ALJ concluded that R.K. is not disabled.  *Id.*

The Appeals Council denied R.K.'s request for review of the ALJ's decision.  AR 20-22.  R.K. then filed the present action seeking judicial review of the decision denying his SSI application.

## II.    LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  *Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021) (citation omitted); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (citation omitted).  In this context, the term "substantial evidence" means "more than a mere scintilla" but "less than a preponderance" and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) and *Molina v. Astrue*, 674 F.3d 1104, 1110-11 (9th Cir. 2012), *superseded by regulation on other grounds*); *see also Morgan*, 169 F.3d at 599 (citation omitted).  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Ahearn*, 988 F.3d at 1115 (citation omitted); *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the decision of the Commissioner.  *Ahearn*, 988 F.3d at 1115-16 (citation omitted); *Morgan*, 169 F.3d at 599 (citation omitted).

1    III.    **DISCUSSION**

2         As noted above, R.K. contends that the ALJ erroneously concluded that his mental

3    impairments are not severe, did not properly evaluate certain medical opinions, and did not

4    provide sufficient reasons for discounting R.K.'s statements and testimony regarding his

5    symptoms.  Because the parties' arguments are at least partly informed by issues concerning the

6    ALJ's evaluation of medical opinions, the Court addresses those arguments first.

7         **A.    Medical Opinions**

8         R.K. contends that the ALJ improperly discounted or rejected the findings and medical

9    opinions of treating physicians Samantha Bessega, M.D. and Katerina Christopoulos, M.D.,

10   consulting examiner Caroline Salvador-Moses, Psy.D., and state agency consultant Robert Liss,

11   Ph.D.  The Commissioner maintains that the ALJ properly evaluated the medical opinions and that

12   her findings are supported by substantial evidence.

13        The Commissioner's rules and regulations regarding the evaluation of medical evidence

14   were revised in March 2017 and apply to claims filed on or after March 27, 2017.  *See* 20 C.F.R.

15   § 416.920c.  For claims filed before March 27, 2017, the rules in 20 C.F.R. § 416.927 apply.  *Id.*

16   Because R.K.'s claims were filed before March 27, 2017, the Court applies the rules then in effect

17   under 20 C.F.R. § 416.927.

18        For claims filed before March 27, 2017, each of the three types of medical opinions—

19   treating, examining, and non-examining—is accorded different weight based on a "three-tiered

20   hierarchy."  *See* 20 C.F.R. § 416.927; *see also Woods v. Kijakazi*, 32 F.4th 785, 789-90 (9th Cir.

21   2022) (describing weighted analysis under "three-tiered hierarchy" that applies to pre-March 27,

22   2017 applications).  In the top tier are treating physicians, whose opinions are generally given

23   more weight than the opinions of those who do not treat the clamant.  *See Woods*, 32 F.4th at 789.

24   A treating physician's opinion is entitled to "controlling weight" if it "is well-supported by

25   medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

26   other substantial evidence" in the record.  20 C.F.R. § 416.927(c)(2).  In the middle tier are

27   physicians who examine, but do not have an ongoing relationship with, the claimant.  *Woods*, 32

28   F.4th at 789.  "To reject either a treating or an examining physician's opinion, an ALJ must

provide 'clear and convincing reasons,' if the opinion is uncontradicted by other evidence, or 'specific and legitimate reasons' otherwise, and the reasons must be supported by substantial evidence." *Id.* (quoting *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017)). "The lowest-weighted tier comprises physicians who only review the record." *Id.* (internal quotations and citation omitted). A non-examining physician's opinion is not, by itself, substantial evidence that justifies the rejection of the opinion of either an examining or treating physician. *Id.* "However, '[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)). Additionally, the ALJ must consider all medical opinions in accordance with several factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the opinion's supportability and consistency, and the physician's specialization, if any. *See* 20 C.F.R. § 416.927(c)(2)-(6); *Revels*, 874 F.3d at 655.

### 1.    Samantha Bessega, M.D.

Dr. Bessega was R.K.'s primary care physician from 2014 to 2018. AR 631; *see also* AR 795. She saw him monthly for the treatment of "HIV neuropathy, asthma/COPD, depression," and symptoms of bilateral foot pain, shortness of breath/wheezing, and fatigue. AR 631. On February 10, 2016, she completed a form titled "Medical Report on Adult with Allegation of [HIV] Infection," in which she noted that R.K. developed bilateral foot pain and was now on HIV medication and Gabapentin, with the "pain currently not completely controlled[.]" AR 492. On that same form, she checked a box indicating that R.K. had "[m]arked restriction of [activities of daily living]." *Id.*

On April 27, 2016, Dr. Bessega completed a Physical Residual Functional Capacity Questionnaire. AR 631-633. She noted that R.K.'s impairments can be expected to last at least twelve months and that Gabapentin caused drowsiness and dizziness. AR 631. She opined that R.K. could walk for five city blocks without rest or severe pain; sit for two hours at one time; and stand for one hour at a time. AR 632. Dr. Bessega noted that during an eight-hour workday, R.K.

could stand and walk for less than two hours, sit about two hours, and that his pain and other symptoms would occasionally[5] be severe enough to interfere with attendance and concentration needed to perform even simple work tasks. *Id*. Dr. Bessega further noted that during an eight-hour workday, R.K. required periods of walking around, the ability to shift positions at will from sitting, standing, or walking, and would need to take two or three breaks of 15 minutes each. *Id*. She opined that he has no significant limitations with reaching, handling, or fingering; could frequently lift and carry up to ten pounds; occasionally lift and carry twenty and fifty pounds; could frequently look up and down, flex his neck, turn his head right or left, and hold his head in a static position; and could occasionally twist, stoop (bend), crouch/squat, and climb ladders and stairs. AR 632-633. Additionally, Dr. Bessega remarked that R.K. "[h]as depression." AR 633.

On October 26, 2016, Dr. Bessega completed a Treating Source Evaluation for Physical Disability, in which she opined to some less restrictive abilities than indicated in her prior April 27, 2016 report. AR 639-642. She opined that in an eight-hour workday, R.K. could occasionally (i.e., two hours out of an eight-hour day) lift and carry twenty pounds; frequently (i.e., six hours out of an eight-hour day) lift and carry ten pounds; stand and walk for less than two hours; and sit for six hours. AR 639. She did not check the box indicating that R.K. would need to periodically alternate sitting and standing. *Id*. Dr. Bessega noted that R.K. could rarely twist, stoop (bend), crouch/squat, climb ladders, climb stairs, balance, kneel and crawl. AR 640. She further noted that R.K. has limitations in his upper and lower extremities due to "carpal tunnel (hand pain, tingling), moderate" and "neuropathic pain severe." *Id*. Dr. Bessega found environmental limitations regarding extreme cold and heat, wetness, and humidity, stating that temperature changes could exacerbate R.K.'s COPD. *Id*. Noting that fatigue is a prominent component of R.K.'s condition, Dr. Bessega opined that fatigue that would cause him to miss one to two days of work per month and disrupt his concentration and/or ability to sustain the stressors and pace of a substantial or full-time work schedule. AR 640-641. She further stated that R.K. would be absent from work about four days each month due to his impairments or treatment; and that R.K.'s

---

[5] The questionnaire defines "occasionally" as "6% to 33% of an 8-hour working day." AR 632.

United States District Court
Northern District of California

symptoms result in marked limitations in consistently performing activities of daily living, social interaction, and concentration/persistence/pace required for substantial work.  AR 641-642.  Dr. Bessega opined that R.K.'s diagnoses exist independently of substance abuse.  AR 642.

R.K. contends, and the Commissioner does not dispute, that the ALJ was required to give specific and legitimate reasons for rejecting Dr. Bessega's opinions.  *See* Dkt. No. 17 at 14, 17. The ALJ gave Dr. Bessega's opinions "little weight" (AR 46), and R.K. contends that she failed to provide the requisite specific and legitimate reasons for doing so.  The Court agrees.

Satisfying the "specific and legitimate reasons" requirement means that an "ALJ must do more than offer his conclusions." *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988). Moreover, "[t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Id.*  Rather, an ALJ "*must set forth his own interpretations and explain why* they, rather than the doctors', are correct." *Id.* at 421-22 (emphasis added); *see also Revels*, 874 F.3d at 654 ("'The ALJ can meet this burden [to provide specific and legitimate reasons] by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, *stating his interpretation thereof, and making findings*.'") (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)) (emphasis added).  In cases where the medical opinions are markedly different from the ALJ's findings, "it is incumbent on the ALJ to provide detailed, reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey*, 849 F.2d at 422.  "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014).

With respect to Dr. Bessega's February 2016 report, the ALJ remarked that Dr. Bessega's opinion that R.K. has marked restrictions on "activities of daily living due to neuropathy is not consistent with objective findings on examination, which show no neurological deficits" and "is also not consistent with [R.K.]'s activities of daily living."  AR 46.  While the Commissioner

asserts that R.K. "consistently had non-focal (normal) neurological examination[s]"[6] (*see* Dkt. No. 18 at 6), it is not clear from the ALJ's cursory statement what "objective findings on examination . . . show[ing] no neurological deficits" she found to be inconsistent with Dr. Bessega's opinion or why. The absence of such an explanation is notable, as the ALJ found at step two of the sequential analysis that R.K.'s HIV-related neuropathy is a severe impairment, signifying that the condition "significantly limits [his] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c).

The Commissioner nonetheless argues that the "ALJ also explained that this opinion was inconsistent with Plaintiff's activities of daily living, which included going to school, volunteering, and traveling to Panama and Costa Rica." Dkt. No. 18 at 6 (citing AR 45-46). A treating physician's opinion may be rejected if it is inconsistent with a claimant's activities, but this principle does not apply where "a holistic view of the record does not reveal an inconsistency between the treating providers' opinions and [the claimant]'s daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ does not specify which activities of daily living she found inconsistent with Dr. Bessega's opinion and why, although elsewhere in her decision the ALJ stated that Dr. Bessega's "extremely restrictive assessments" were at odds with the fact that R.K. was "attending college albeit in a disabled students' program," and that he was "happy and excited about school" and "liked the idea that he was trying to improve." AR 46-47. Even assuming the activities the ALJ had in mind are those listed in the Commissioner's summary judgment brief, R.K. correctly notes that the record indicates that his activities of daily living were accomplished with considerable support and accommodations, and under conditions where he could proceed at his own pace. For example, R.K. was in class only ten to fifteen hours per week and received various accommodations for his impairments while attending school (including use of a scooter, use of a computer for essay exams, extra time on tests, a reduced-distraction testing environment, and classroom breaks if necessary); he was in a residential treatment program where

---

[6] The records cited by the Commissioner state that R.K.'s neurologic examinations were "non-focal," and say nothing about whether the examination results were "normal." *See* AR 508, 590, 599, 612, 618, 660, 677, 681, 740, 767, 772, 786.

1    he received housing and counseling support; he engaged in community outreach services while

2    receiving support and meals from a hospice services staff; and he took one trip abroad during a

3    period when his health improved, but testified that he had difficulty walking during that trip.

4    There are no other details in the record as to that trip, such that it can be deemed substantial

5    evidence of an inconsistency with Dr. Bessega's opinion.  *See* AR 101-102, 104-105, 646, 878,

6    952, 995, 998.

7        The ALJ's decision is similarly deficient with respect her assignment of "little weight" to

8    the opinions expressed in Dr. Bessega's April 27, 2016 Physical Residual Functional Capacity

9    Questionnaire and October 26, 2016 Treating Source Evaluation for Physical Disability.  AR 46.

10   In discounting Dr. Bessega's April 27, 2016 opinion, the ALJ simply stated, "[t]he undersigned

11   affords this opinion little weight because it is too restricted and not supported [by] the record as a

12   whole, or Dr. Bessega's own treating records."  *Id.*  The Commissioner argues that the ALJ

13   "explained that Dr. Bessega's April 2016 opinion was inconsistent with her own treating records

14   that document non-focal (normal) neurological examination, full range of motion, and normal

15   respiratory and cardiovascular examinations."  *See* Dkt. No. 18 at 6 (citing AR 46, 723, 740, 767,

16   782, 786, 789).  No such explanation appears in the cited portion of the ALJ's decision.  *See* AR

17   46.  Even assuming the ALJ actually gave such an explanation, it would still not be clear why any

18   such objective findings would necessarily conflict with Dr. Bessega's opinion, which noted

19   (among other things) that R.K. has depression and that Gabapentin caused dizziness and

20   drowsiness.  *See* AR 631, 633.  The ALJ's cursory statement, without any further explanation,

21   does not satisfy the requirement to provide specific and legitimate reasons for discounting Dr.

22   Bessega's April 27, 2016 opinion.  *See Embrey*, 849 F.2d at 421-22 (concluding that even where

23   the ALJ's "opinion does review the medical evidence," merely stating that a treating physician's

24   opinions are not supported by objective findings is insufficient); *see also Castillo v. Astrue*, 310 F.

25   App'x 94, 95-96 (9th Cir. 2009) ("The ALJ's cursory statement that the medical evidence from a

26   three-month window of treatment is 'inconsistent' with the treating source opinion is neither

27   supported by the record nor sufficient to support the rejection of that opinion.").

28       With respect to Dr. Bessega's October 26, 2016 opinion, the ALJ gave it "little weight

United States District Court
Northern District of California

9

United States District Court
Northern District of California

because it is too restricted and the absences are not supported." *Id*.  The Commissioner contends that the ALJ "properly found this extreme opinion too restrictive and unsupported by the record," but the Commissioner simply cites to the portion of the ALJ's decision containing the cursory statement quoted above.  *See* Dkt. No. 18 at 7.  The ALJ's decision does not meet the "specific and legitimate reasons" standard, particularly where Dr. Bessega's opinion also noted that fatigue is a prominent component of R.K.'s condition that would significantly impact his ability to work on a full-time schedule.  AR 640-641.  *See Embrey*, 849 F.2d at 421-22; *Castillo*, 310 F. App'x at 95-96.

Citing *Bayliss v. Barnhart*, 427 F.3d 1211 (9th Cir. 2005), the Commissioner maintains that the ALJ is not required to provide a detailed "function-by-function" analysis in discounting Dr. Bessega's opinions.  *See* Dkt. No. 18 at 7.  The Commissioner's reliance on *Bayliss* is misplaced, as the cited portion of that decision describes an ALJ's RFC analysis, not the level of specificity required to satisfy the "specific and legitimate reasons" standard in evaluating medical opinions.  *See Bayliss*, 427 F.3d at 1217.  Certainly, the ALJ was required to provide more than the perfunctory statements given to justify her decision to discount Dr. Bessega's opinions.

The ALJ did not provide sufficient reasons, supported by substantial evidence, for discounting Dr. Bessega's opinion.  On this issue, R.K.'s motion for summary judgment is granted, and the Commissioner's cross-motion for summary judgment is denied.[7]

### 2.      Katerina Christopoulos, M.D.

Dr. Christopoulos has been R.K.'s primary care physician since February 2018 and sees him every one to three months.  *See* AR 796, 862, 1041.  On September 11, 2018, she completed a "Human Immunodeficiency Virus (HIV) Infection Medical Assessment Form," in which she

---

[7] There seems to be a dispute between the parties regarding whether the ALJ partially agreed with some of Dr. Bessega's opinions.  *See* Dkt. No. 17 at 18; Dkt. No. 18 at 7.  Although it does not affect the Court's conclusion regarding the ALJ's evaluation of Dr. Bessega's opinions, the record indicates that Dr. Bessega opined that R.K. can stand/walk for *less than* two hours in an eight-hour day, whereas the ALJ concluded that R.K. could stand/walk for two hours in an eight-hour day.  *See* AR 42, 632, 639.  However, in her October 26, 2016 opinion, Dr. Bessega stated that R.K. could sit for six hours in an eight-hour day, and the ALJ reached the same conclusion in her RFC assessment.  *See* AR 42, 639.

United States District Court
Northern District of California

1  noted R.K.'s diagnoses of HIV, depression, COPD, sciatica, and HIV-related neuropathy, and

2  identified drowsiness and sedation as side effects of the medications Gabapentin and Nortriptyline.

3  AR 862.  She stated that R.K.'s prognosis was "guarded," noted that he had not shown medical

4  improvement, and indicated that manifestations of his HIV infection included fatigue and

5  "[m]arked difficulties in completing tasks in a timely manner due to deficiencies in [concentration,

6  persistence, or pace]."  *Id*.  She opined that during an eight-hour workday, R.K.'s symptoms

7  would frequently[8] interfere with attention and concentration needed to perform even simple work

8  tasks.  *Id*.  She further stated that R.K. could walk five city blocks without rest; sit less than two

9  hours in an eight-hour workday; and walk and stand about two hours in an eight-hour workday.

10  AR 862-863.  Dr. Christopoulos noted that during an average workday, R.K. would need to take

11  five unscheduled thirty-minute breaks.  AR 863.  She assessed that R.K. could occasionally[9] lift or

12  carry less than ten pounds; rarely[10] lift or carry ten pounds; and never lift or carry twenty pounds

13  or fifty pounds.  AR 863.  With respect to R.K.'s mental/emotional capabilities, Dr. Christopoulos

14  indicated that he has "[u]nlimited or [v]ery [g]ood" ability to interact appropriately with the

15  general public; understand, remember, and carry out very short, simple instructions; complete a

16  normal workday and workweek without interruption from psychologically-based symptoms;

17  accept instructions and respond appropriately to criticism from supervisors; and respond

18  appropriately to changes in a routine work setting.  AR 863-864.  She noted that R.K. had

19  "[l]imited but satisfactory" ability to deal with normal work stress of routine, repetitive low stress

20  jobs.  AR 864.  Dr. Christopoulos indicated that R.K.'s ability to maintain attention for even

21  simple, repetitive tasks is "[s]eriously limited, but not precluded."[11]  She assessed that R.K. is

---

[8] The form defines "frequently" to mean "34% to 66% of an eight-hour working day."  AR 862.

[9] The form defines "occasionally" to mean "6% to 33% of an eight-hour working day."  AR 862.

[10] The form defines "rarely" to mean "1% to 5% of an eight-hour working day."  AR 862.

[11] The form defines "Seriously limited, but not precluded" to mean that "ability to function in this area is seriously limited and less than satisfactory, but not precluded.  This is a substantial loss of ability to perform the work-related activity."  AR 863.

1    "[u]nable to meet competitive standards"[12] with respect to his ability to "[w]ork in coordination

2    with or proximity to others without being unduly distracted or distracting of coworkers" and to

3    "[p]erform routine repetitive work at a consistent pace without an unreasonable number and length

4    of rest periods." *Id.*

5        On October 16, 2018, Dr. Christopoulos wrote a statement noting that since the summer of

6    2018, R.K. experienced flares of sciatica, received physical therapy for that condition, and used

7    nonsteroid anti-inflammatory drugs and a lidocaine patch to help manage his sciatica-related pain.

8    AR 947.  She opined that R.K. "should avoid lifting anything over 10 pounds for an extended

9    period of time or 5 pounds in a repeated fashion." *Id.*  She further noted that R.K. "should also

10   minimize the number of stairs he needs to climb to one flight." *Id.*

11       On November 27, 2018, Dr. Christopoulos completed a Student Disability Verification

12   form, requesting accommodations for R.K., who was attending City College of San Francisco in

13   the hopes of becoming a community health worker.  AR 949-950, 952-953; *see also* AR 104-105.

14   In that form, Dr. Christopoulos noted R.K.'s diagnoses of HIV, sciatica, COPD, and neuropathy,

15   and indicated that he had "[l]imited ambulation," "[p]oor concentration," and was "[e]asily

16   distracted." AR 949.  She checked boxes on the form indicating that R.K.'s condition is

17   "[p]ermanant/[c]hronic" and "[p]rone to exacerbations." *Id.*  As noted above, the accommodations

18   provided to R.K. at school included use of a computer for essay exams; a reduced-distraction

19   testing environment; extra time on tests; use of a scooter; and classroom breaks, if necessary.

20   AR 952.

21       On May 7, 2019, Dr. Christopoulos completed another "Human Immunodeficiency Virus

22   (HIV) Infection Medical Assessment Form," this time in response to a medical statement

23   submitted by Jerilynn Campbell, M.D., an internal medicine specialist who testified as a medical

24   expert at the second administrative hearing held on June 20, 2019.[13]  AR 1041-1043; *see also*

---

[12] The form defines "Unable to meet competitive standards" to mean that the "patient cannot satisfactorily perform this activity independently, appropriately, effectively and on a sustained basis in a regular work setting."  AR 863.

[13] In February 2019, several months prior to the second administrative hearing, Dr. Campbell provided written responses to the ALJ's request for information, based on her review of the

12

United States District Court
Northern District of California

AR 85, 931, 1044.  Dr. Christopoulos noted that R.K.'s HIV infection manifested in neuropathy and marked restrictions in activities of daily living.  AR 1041.  She opined that R.K. can walk for two city blocks without rest; stand/walk less than two hours in an eight-hour workday; and sit for about four hours in an eight-hour workday.  AR 1042.  Additionally, R.K. would need to take five unscheduled, 30-minute breaks during an average eight-hour workday.  *Id*.  Dr. Christoupolos assessed that in a competitive work situation, R.K. could occasionally[14] lift and carry less than ten pounds; rarely[15] lift and carry ten pounds; and never lift and carry twenty pounds or fifty pounds. *Id*.  She further opined that R.K. had "[u]nlimited or [v]ery [g]ood" ability to "[w]ork in coordination with or proximity to others without being unduly distracted or distracting of coworkers"; "[l]imited but satisfactory" ability to maintain attention for simple, repetitive tasks, and deal with normal work stress of routine, repetitive low stress jobs.  But she noted that R.K. cannot meet competitive standards for performing "routine, repetitive work at a consistent pace without an unreasonable number and length of rest periods."  AR 1043.  She further commented that R.K. has pain in his lower extremities due to sciatica and HIV-related neuropathy, and uses a cane for balance and assistance in rising from a seated position.  *Id*.

The ALJ gave "little weight" to Dr. Christopoulos's opinion.  AR 46-47.  Neither R.K. nor the Commissioner clearly state whether, in doing so, the ALJ was required to provide "clear and

---

evidence.  *See* AR 935-945.  She opined that R.K. could lift and carry up to ten pounds continuously, up to twenty pounds frequently, up to fifty pounds occasionally, and never lift or carry more than fifty pounds.  AR 936.  Dr. Campbell assessed that R.K. can sit for four hours at one time and stand/walk for two hours at a time.  AR 937.  During an eight-hour workday, R.K. could sit for six hours and stand/walk for four hours.  *Id*.  She further noted that R.K. could continuously engage in reaching and manipulative activities with his hands bilaterally, and could frequently operate foot controls bilaterally, but stated that "[r]ight-sided sciatica and bilateral lower extremity pain attributed to peripheral neuropathy may limit use of foot controls to less than frequently."  AR 938.  Dr. Campbell opined that R.K. could occasionally engage in postural activities, again noting that pain attributed to sciatica and peripheral neuropathy may limit such activities to less than frequently.  AR 939.  She noted certain environmental limitations, and observed that R.K. has nonfocal neurologic examinations, rides a bike, attends physician meetings alone, and takes public transportation.  AR 940-941.  Dr. Campbell also remarked that R.K. "has psychiatric co-morbidities and substance abuse [that] may negatively impact regular attendance to work."  AR 941.

[14] The form defines "occasionally" to mean 6% to 33% of an eight-hour working day."  AR 1042.

[15] The form defines "rarely" to mean "1% to 5% of an eight-hour working day."  AR 1042.

United States District Court
Northern District of California

convincing" reasons, or "specific and legitimate" ones.  In any event, the ALJ gave only one reason for discounting Dr. Christopoulos's opinion, which does not satisfy either standard.  The ALJ found Dr. Christopoulos's opinion to be "too restricted and unsupported" because R.K. was attending and enjoying school.  As stated by the ALJ:  "The claimant is attending college albeit in a disabled students' program.  In January 2019, the claimant stated that he liked school and he liked the idea that he was trying to improve.  In March 2019, he stated that he remained happy and excited about school." AR 46-47 (citing AR 993, 998).  Nothing about R.K.'s attendance at or enjoyment of school, or his desire to improve his situation, is inherently inconsistent with Dr. Christopoulos's opinion regarding his limitations.  "[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998); *see also Cooper v. Brown*, 815 F.2d 557, 561 (9th Cir. 1987) ("Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity.") (internal quotations and citation omitted).  Moreover, it is not clear why the ALJ found R.K.'s attendance at school to be inconsistent with Dr. Christopoulos's opinion regarding his limitations.  As discussed above, R.K. attended classes for only ten to fifteen hours per week, and received various accommodations, including use of a scooter, a reduced-distraction testing environment, extra time for tests, and classroom breaks.  AR 949-950, 952-953.  Nor is the Court persuaded by the Commissioner's suggestion (*see* Dkt. No. 18 at 8) that evidence of failing grades or an inability to complete his school program is required to corroborate R.K.'s claimed limitations.  *See Garrison*, 759 F.3d at 1016 ("We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day."); *Reddick*, 157 F.3d at 722 ("Only if the level of activity were inconsistent with Claimant's claimed limitations would these activities have any bearing on Claimant's credibility.").

The ALJ did not provide sufficient reasons, supported by substantial evidence, for discounting Dr. Christopoulos's opinion.  On this issue, R.K.'s motion for summary judgment is granted, and the Commissioner's cross-motion for summary judgment is denied.

### 3.   Caroline Salvador-Moses, Psy.D.

Consulting examiner Dr. Salvador-Moses is a psychologist who conducted a mental status evaluation of R.K. on December 7, 2016.  AR 645-648.  As part of her evaluation, Dr. Salvador-Moses reviewed R.K.'s medical records, interviewed R.K. and gathered information about his psychosocial history and activities of daily living, and made mental status findings.  *Id*.  She diagnosed R.K. with major depressive disorder, recurrent, moderate to severe; history of attention deficit hyperactivity disorder ("ADHD"); and post-traumatic stress disorder.  AR 647.  She also noted her diagnostic impressions that R.K. "presents with symptoms of depression and trauma," was "diagnosed with ADHD as a child," and that his "[s]ymptoms cause distress and lead to clinically significant impairment in various areas of functioning."  *Id*.  She stated that R.K.'s prognosis is guarded."  *Id*.  She observed that during the evaluation, R.K. "appeared depressed and anxious, and psychomotor retardation was evident."  AR 648.

Dr. Salvador-Moses opined that R.K. is unable to independently manage his own funds. *Id*.  She further found that R.K. has no impairment in "his ability to understand and carry out simple instructions and tasks," but shows "severe impairment as the instructions and tasks become more complex."  *Id*.  While R.K. was noted to be "pleasant and cooperative," with "no impairment in his ability to interact appropriately with the public," Dr. Salvador-Moses opined that "his mental health and medical issues impact his ability to interact appropriately with supervisors and co-workers to a severe extent."  *Id*.  She also noted "moderate impairment in his concentration due to ADHD, and moderate impairment in his pace and persistence due to fatigue."  *Id*.  She further found "severe impairment in his ability to attend to usual work situations, including attendance, safety, etc. as well as in his ability to deal with changes in a routine work environment."  *Id*.

In giving Dr. Salvador-Moses's opinion "little weight," the ALJ stated, in highly conclusory fashion, that "it is overly restrictive, unsupported by the other evidence and is based on a one-time examination of the claimant."  AR 48.  R.K. seems to suggest that the ALJ was obliged to provide "specific and legitimate reasons" (*see* Dkt. No. 17 at 21) to support her assessment of Dr. Salvador-Moses's opinion, and the Commissioner does not refute that assertion.  Although the Commissioner argues that the ALJ "repeatedly noted throughout her decision [that R.K.] went to

school, volunteered, and traveled to Panama and Costa Rica" (Dkt. No. 18 at 9), the ALJ did not

actually identify what "other evidence" she found inconsistent with Dr. Salvador-Moses's

assessment of R.K.'s capabilities, or explain why she concluded that any such evidence rendered

Dr. Salvador-Moses's opinion "overly restrictive."[16]   The ALJ's blanket statement is not

sufficient.  *See Embrey*, 849 F.2d at 421-22; *Castillo*, 310 F. App'x at 95-96.  Moreover, the fact

that Dr. Salvador-Moses conducted a one-time examination is not, in itself, a legitimate basis to

discount an opinion; that "rationale would render all examining opinions superfluous, and is

contrary to the requirement that the ALJ consider all relevant evidence, including medical

opinions of examining doctors."  *Brown v. Berryhill*, No. 17-cv-02834-JCS, 2018 WL 4700348, at

*17 (N.D. Cal. Sept. 29, 2018) (internal quotations and citation omitted).

      The ALJ did not provide sufficient reasons, supported by substantial evidence, for

discounting Dr. Salvador-Moses's opinion.  On this issue, R.K.'s motion for summary judgment is

granted, and the Commissioner's cross-motion for summary judgment is denied.

### 4.     Robert Liss, Ph.D.

      In February 2017, Dr. Liss, a state agency consultant, reviewed R.K.'s records and found

that he has a severe medically determinable impairment in the category of "[d]epressive, [b]ipolar,

and [r]elated [d]isorders."  AR 138.  Dr. Liss assessed R.K. with mild to moderate impairments in

his mental functioning.  Specifically, Dr. Liss opined that R.K. has mild limitations in his ability to

interact with others and to adapt or manage himself.  *Id.*  He found that R.K. has moderate

limitations in his ability to understand, remember, or apply information—namely, in his ability to

understand and remember detailed instructions.  He also found moderate impairments in R.K.'s

ability to concentrate, persist, or maintain pace—namely, in his ability to carry out detailed

instructions; maintain attention and concentration for extended periods; perform activities within a

schedule, maintain regular attendance, and be punctual within customary tolerances; and to

complete a normal workday and workweek without interruptions from psychologically-based

---

[16] While the Commissioner posits that "Dr. Salvador-Moses's own examination of Plaintiff revealed normal findings, which further undermined his [sic] opinion" (Dkt. No. 18 at 9), no such explanation appears in the ALJ's decision.

United States District Court
Northern District of California

1   symptoms and to perform at a consistent pace without an unreasonable number and length of rest

2   periods.  AR 138, 143-144.  Dr. Liss concluded that R.K. can "sustain simple work, interact, and

3   adapt."  AR 139, 144.

4          The ALJ disagreed with Dr. Liss's opinion based on R.K.'s (1) activities; (2) testimony

5   about his depression; and (3) reported improvement with medication.  As stated by the ALJ:

> The claimant has been attending school, he traveled, he volunteered
> and he gets around.  The claimant reported improvement with
> medication.  The undersigned does not find that the claimant's
> mental impairment is severe for the full twelve months.  When
> asked about his depression at the hearing, he testified that "it is not
> crippling," and that he has low motivation—which he had
> apparently gotten past given that he is pursuing a degree.

10  AR 48 (citing AR 128-147, 749, 764, 775, 832, 839, 1018, 1026).

11         R.K.'s activity level is not substantial evidence contradicting Dr. Liss's assessment of

12  R.K.'s functional limitations.  As discussed above, the record indicates that R.K.'s activities were

13  accomplished with support and accommodations, and under conditions where he could proceed at

14  his own pace.  *See, e.g.,* AR 101, 102, 104-105, 646, 878, 952, 995, 998.  The Commissioner

15  makes much of the fact that R.K. was found "fully compliant" with his residential treatment

16  program's rules and regulations, including the requirement of "[w]orking or volunteering at least

17  32 hours per week."  Dkt. No. 18 at 8 (citing AR 876).  However, it is not clear whether the ALJ

18  considered or accounted for R.K.'s hearing testimony that while he was at that program, he was

19  "exempt [from that requirement] due to [his] physical condition" and that he "just did a lot of

20  dishes to try to . . . pitch in [his] part"—an effort that he says amounted to about "an hour of

21  dishes a day," after which he would "have to take a break for a while."  AR 102-103.  While R.K.

22  also attempted to work (delivering food on a gas-fueled scooter) while at the program, he testified

23  that he did that for only "about a month and a half," and "couldn't keep doing it."  AR 103.

24         Nor is it apparent that R.K.'s testimony that his depression was "not crippling" is

25  inconsistent with Dr. Liss's assessment.  Dr. Liss opined that R.K. has mild to moderate

26  limitations in his mental functioning, but did not state that R.K.'s mental impairment(s) were

27  completely debilitating.

28         With respect to R.K.'s "reported improvement with medication," the longitudinal record

United States District Court
Northern District of California

1   indeed demonstrates that—except for a period around July 2018 when R.K. reported that he had

2   relapsed on methamphetamine—R.K.'s depression generally improved with medication, such that

3   Dr. Christopoulos noted on several occasions in the first half of 2018 that R.K. was "[d]oing well"

4   on bupropion (Wellbutrin), and his treating psychiatrist Dr. Dan Karasic, M.D. noted that R.K.'s

5   depression went into remission in March 2017 and again in April 2019. *See* AR 764, 796, 832,

6   839, 1018.  However, "[r]eports of 'improvement' in the context of mental health issues must be

7   interpreted with an understanding of the patient's overall well-being and the nature of h[is]

8   symptoms." *Garrison*, 759 F.3d at 1017.  "They must also be interpreted with an awareness that

9   improved functioning while being treated and while limiting environmental stressors does not

10  always mean that a claimant can function effectively in a workplace." *Id.*; *see also Ghanim*, 763

11  F.3d at 1162 (ALJ should take "holistic review of the record" in evaluating medical opinions).

12      Insofar as the ALJ rejected Dr. Liss's opinion based on R.K.'s improved depression on

13  medication, it is not clear whether the ALJ took the requisite holistic view of the record.  Here, the

14  record as a whole indicates that between November 2015 and March 2019—and with the

15  exception of a one-year period between June 2017 and June 2018 (during which R.K. apparently

16  relapsed on methamphetamine at some point)—R.K. was receiving treatment and supportive

17  services at residential facilities, including a facility for men with HIV/AIDS and a residential

18  addiction treatment program. *See* AR 361, 876, 959.  Moreover, the record indicates that R.K.'s

19  depression was one component of his overall mental well-being, and that he continued to struggle

20  with a tendency to isolate and feelings of anxiety and stress, even as his depression improved.  For

21  example, a January 2019 progress note by a counselor at R.K.'s addiction treatment program

22  observed that R.K. had a "tendency to isolate," "liked living on the street for so long because he

23  wanted to isolate," and "has essentially been homeless his whole life.  He is used to it and almost

24  prefers it and it always brings him back to using [drugs]."  AR 998.  Other progress notes indicate

25  that R.K. reported periods of increased anxiety, and his scores based on his self-reported responses

26  on a Depression Anxiety Stress Scale administered by the program's staff, indicate that between

27  September 2018 and February 2019, R.K.'s depression level remained normal, but he experienced

28  moderate levels of anxiety and mild to moderate levels of stress. *See* AR 887, 903-904, 963-964.

United States District Court
Northern District of California

The ALJ did not provide sufficient reasons, supported by substantial evidence, for discounting Dr. Liss's opinion.  On this issue, R.K.'s motion for summary judgment is granted, and the Commissioner's cross-motion for summary judgment is denied.

### B.    Mental Impairments

At step two of the sequential analysis, the ALJ found that R.K. has non-severe impairments of depressive disorder (NOS) and a history of substance abuse disorder, with no more than mild limitations in the four broad areas of mental functioning described in regulations for evaluating mental impairments, known as the "paragraph B" criteria:  understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  *See* AR 40-41; *see also* 20 C.F.R. § 416.920a (describing process for evaluating mental impairments).  Specifically, the ALJ found that R.K. has no limitation in his ability to interact with others, and mild limitations in the other three functional areas.  AR 41.

R.K. does not appear to take issue with the ALJ's findings concerning his history of substance abuse disorder, including that his methamphetamine abuse was in remission—a finding that is supported by substantial evidence.  *See* AR 41 (citing AR 1018, 1026); *see also* AR 1003, 1034..  However, R.K. contends that in finding that his depression is not severe, the ALJ selectively cited periods of improvement over a four-year period and committed prejudicial error by not including any mental limitations at all in R.K.'s RFC.  The Commissioner maintains that the ALJ's findings are supported by substantial evidence, and that even if the ALJ erred, any error is harmless because the ALJ considered all of the medical evidence and the medical opinions regarding R.K.'s mental functioning when assessing his RFC.

At step two of the five-step sequential analysis, the ALJ must assess the medical severity of a claimant's impairments.  20 C.F.R. § 416.920(a)(4)(ii); *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  "[T]he step-two inquiry is a de minimis screening device to dispose of groundless claims."  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).  A severe impairment "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 416.921.  The claimant bears the burden of showing that he has a medically severe impairment or combination of impairments.  *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (stating

United States District Court
Northern District of California

that "[t]he burden of proof is on the claimant as to steps one to four" of the sequential analysis).

An impairment or combination of impairments is considered "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. § 416.920(c).  "Basic work activities are abilities and aptitudes necessary to do most jobs," *Smolen*, 80 F.3d at 1290, including "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; seeing, hearing, and speaking; understanding, carrying out, and remembering simple instructions; use of judgement, responding appropriately to supervision, coworkers, and usual work situations; and dealing with changes in a routine work setting," SSR 85-28, 1985 WL 56856 at *3.  "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Smolen*, 80 F.3d at 1290 (citing SSR 85-28); *see also Webb*, 433 F.3d at 686 (same).  If the claimant has a severe medically determinable physical or mental impairment, or a combination of impairments, that is expected to last at least 12 continuous months, he is disabled. 20 C.F.R. §§ 416.909, 416.920(a)(4)(ii).

R.K. correctly notes that the ALJ mischaracterized his depression as depressive disorder NOS, in view of Dr. Salvador-Moses's 2016 diagnosis of major depressive disorder ("MDD"), recurrent, moderate to severe, and the fact that Drs. Karasic and Christopoulos subsequently assessed R.K.'s depression as MDD, recurrent, moderate in 2017 and 2018, respectively.  *See* AR 647, 749, 796.  Nevertheless, it is not clear that the ALJ's mischaracterization of R.K.'s depression necessarily affected her review and analysis of the record, as she did note elsewhere in her step two analysis that R.K. had MDD.  *See* AR 40, 41.

R.K. nonetheless maintains that the ALJ cherry-picked periods of improvement in his depression, without considering how often he had remissions and whether he continued to have symptoms even when he was feeling better.  In her step two analysis, the ALJ noted medical treatment records indicating that R.K. was doing well on medication and that his depression was in remission in March 2017 and again in April 2019.  AR 40-41 (citing AR 749, 764, 775, 832, 839, 1018).  The ALJ acknowledged that in July 2018, R.K. "reported that his mood had been down due to sciatica and his relapse on meth," as well as his subsequent period of treatment at the

20

residential additional treatment facility.  AR 41.  She nonetheless noted that a February 2019 treatment record states that R.K.'s mood was good, and that he reported "feeling well," and that he was attending school.  AR 41 (citing AR 1026).  The ALJ also noted that by April 2019, when R.K.'s depression was again found to be in remission, R.K. reported that his mood was good and that he was in school, with interest in working as a navigator for homeless people.  AR 41 (citing AR 1018).

While the ALJ's summary of these records is generally accurate, the Court cannot conclude that the ALJ did not err in her step two analysis or that the error is harmless.  The result here may have been different had the ALJ properly evaluated the medical opinions, including those of Dr. Salvador-Moses and Dr. Liss.

On this issue, R.K.'s motion for summary judgment is granted, and the Commissioner's cross-motion for summary judgment is denied.

### C.    R.K.'s Testimony

R.K. contends that the ALJ failed to provide clear and convincing reasons, based on substantial evidence, for discounting the alleged severity of his subjective symptoms.

An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment.  *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1106 (9th Cir. 2014) (internal quotations and citation omitted).  In assessing a claimant's subjective testimony, an ALJ conducts a two-step analysis.  First, "the claimant 'must produce objective medical evidence of an underlying impairment' or impairments that could reasonably be expected to produce some degree of symptom."  *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Smolen*, 80 F.3d at 1281-82).  If the claimant does so, and there is no affirmative evidence of malingering, then the ALJ can reject the claimant's testimony as to the severity of the symptoms "'only by offering specific, clear and convincing reasons for doing so.'"  *Id.* (*quoting Smolen*, 80 F.3d at 1281); *see also Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) ("We therefore review the ALJ's discrediting of Claimant's testimony for specific, clear, and convincing reasons.").  That is, the ALJ must make an assessment "with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.'"  *Id.* (quoting *Thomas*,

278 F.3d at 958). "This is not an easy requirement to meet:  The clear and convincing standard is the most demanding required in Social Security cases." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quotations and citation omitted).  General findings are not sufficient to meet this standard; an ALJ "must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

An ALJ may consider several factors, including (1) ordinary techniques of credibility evaluation; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities.  *Tommasetti*, 533 F.3d at 1039.  Additionally, an ALJ may also consider the observations of treating and examining physicians and other third parties concerning the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; and functional restrictions caused by the symptoms.  *Smolen*, 80 F.3d at 1284.  "Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  "If the ALJ's finding is supported by substantial evidence, the court 'may not engage in second-guessing.'" *Tommasetti*, 533 F.3d at 1039 (quoting *Thomas*, 278 F.3d at 959).

The ALJ found that R.K. has the following severe impairments:  bilateral CTS, status post releases, status post trigger finger release; HIV; HIV-related neuropathy; sciatica; and COPD.  She also found that R.K. has non-severe medically determinable impairments of depressive disorder (NOS) and a history of substance abuse disorder.  AR 40, 44.  While the ALJ found that R.K.'s medically determinable impairments could reasonably be expected to cause the alleged symptoms, she concluded that R.K.'s statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  AR 44.

Although the ALJ reviewed and summarized R.K.'s statements regarding his subjective symptoms (*see* AR 42-43), on the whole, she erred insofar as she did not specify which testimony she found not credible and what evidence suggests that those allegations are not credible.  *Dodrill*, 12 F.3d at 918.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    The ALJ otherwise stated that R.K.'s "statements concerning the intensity, persistence and

2    limiting effects of [his] symptoms are not fully supported by the objective medical evidence and

3    other relevant documented evidence."  AR 45.  The "other relevant documented evidence" appears

4    to refer to R.K.'s activities, namely his 2017 trip to Panama and Costa Rica; a letter from the

5    residential addiction treatment facility indicating that R.K. "work[ed]/volunteered 32 hours"; and

6    R.K.'s attendance at, and enjoyment of, school.  *Id*.  Daily activities may be grounds for

7    discounting a claimant's allegations if the "claimant is able to spend a substantial part of his day

8    engaged in pursuits involving the performance of physical functions that are transferable to a work

9    setting."  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotations and citation

10   omitted).  The mere fact that R.K. engaged in these activities is not substantial evidence to support

11   that his activities were transferable to a work setting or that he spent a substantial part of his day

12   engaged in transferable skills.  As discussed above, R.K.'s activities of daily living were

13   accomplished with considerable support and accommodations, and under conditions where he

14   could proceed at his own pace.  He took one trip abroad during a period when his health improved,

15   but testified that he had difficulty walking during that trip, and there are no other details in the

16   record as to that trip.  *See* AR 101-102, 104-105, 646, 878, 952, 995, 998.  Moreover, it is not

17   clear that the ALJ properly accounted for R.K.'s testimony that his work/volunteer activities at the

18   residential addiction treatment facility involved about "an hour of [washing] dishes a day," and a

19   brief attempt to work delivering food.  AR 102-103.  The ALJ otherwise may need to re-evaluate

20   R.K.'s statements and testimony after re-considering the medical evidence and opinions using the

21   correct standards.

22   On this issue, R.K.'s motion for summary judgment is granted, and the Commissioner's

23   cross-motion for summary judgment is denied.

24   **IV.    DISPOSITION**

25   R.K. asks the Court to remand for further proceedings, or alternatively for payment of

26   benefits.  The  Act permits courts to affirm, modify, or reverse the Commissioner's decision "with

27   or without remanding the case for a rehearing."  42 U.S.C. § 405(g).  "[W]here the record has been

28   developed fully and further administrative proceedings would serve no useful purpose, the district

court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004). However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877-78 (9th Cir. 2018) (citations omitted).

As discussed above, the Court finds that the ALJ erred. On remand the ALJ must (1) consider and weigh the medical opinions, and provide adequate explanation(s) for the weight assigned to each opinion, which may in turn require the ALJ to re-evaluate (2) the severity of R.K.'s MDD at step two of the five-step sequential analysis; and (3) R.K.'s allegations regarding his subjective symptoms. It is not clear from the record that the ALJ would be required to find R.K. disabled if all the evidence were properly evaluated. Therefore, remand is appropriate.

## V. CONCLUSION

Based on the foregoing, the Court grants R.K.'s motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands this matter for further administrative proceedings consistent with this order. The Clerk of Court shall enter judgment accordingly and close this file.

**IT IS SO ORDERED.**

Dated: March 6, 2023

VIRGINIA K. DEMARCHI
United States Magistrate Judge